UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:24-cv-00223

———

**Jerrodrick Campbell,**
*Plaintiff,*

v.

**Chinedu Atumah et al.,**
*Defendants.*

———

**O R D E R**

Plaintiff Jerrodrick Campbell, a Texas Department of Criminal Justice ("TDCJ") inmate proceeding pro se and in forma pauperis, brought this action alleging violations of his civil rights. Doc. 10. The case was referred to a magistrate judge. Now before the court is defendants' motion for summary judgment (Doc. 50), the magistrate judge's report and recommendation (Doc. 67) on that motion, and plaintiff's timely filed objections (Doc. 69).

**I.  Procedural background**

Plaintiff alleges that defendant Atumah violated his Eighth Amendment rights by using excessive force on the Coffield Unit. Doc. 10-1 at 1. He also claims that defendant McClain failed to intervene to protect him during the incident and that defendants Henslee and Enge failed to train and supervise. *Id.* at 1–3. Plaintiff also contends that he was improperly placed in restrictive housing and given a disciplinary case. *Id.* at 2.

The magistrate judge issued a report recommending that the court grant defendants' motion for summary judgment and dismiss plaintiff's claims against defendants Atumah and McLain with prejudice. Doc. 67 at 35. After viewing the surveillance footage of the incident and applying each of the *Hudson* factors, the magistrate judge found that plaintiff failed to demonstrate that defendant Atumah acted maliciously and sadistically for the very purpose of causing harm. *Id.* at 21–22. The magistrate judge also determined that plaintiff likewise failed to show that defendant

- 1 -

McLain failed to intervene as necessary to establish bystander liability. *Id.* at 22–23.

Finally, the magistrate judge determined that plaintiff's claims against defendants Henslee and Enge should be dismissed with prejudice for the failure to state a claim under 28 U.S.C. § 1915A(b)(1). *Id.* at 35. Plaintiff filed timely objections. Doc. 69.

## II.  Legal standards

The court reviews the objected-to portions of a magistrate judge's report and recommendation de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. Unit B 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Furthermore, a party's entitlement to de novo review does not entitle it to raise arguments that were not presented to the magistrate judge without a compelling reason. *See Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir. 1994). When there have been no timely objections to a report, or the objections are improper, "the court need only satisfy itself that there is no clear error on the face of the record." Fed. R. Civ. P. 72(b), advisory committee's notes to 1983 amendment.

## III. Factual background

The summary judgment evidence contains surveillance footage of the incident, which occurred inside a prison hallway. Doc. 50-3. The footage depicts plaintiff striking defendant Atumah — surreptitiously from behind — and then plaintiff continuing to struggle as defendant attempted to gain control and move to safety. *Id.* at 3:16–4:00. As the magistrate judge highlighted, the footage shows plaintiff striking defendant with his fist several times. *Id.* at 3:16–3:30. Defendant pepper sprayed plaintiff during the struggle, to no avail, as plaintiff continued to throw punches. *Id.* at 3:24–3:30. And though defendant was then able to place

plaintiff against the wall, plaintiff continued to struggle and resist him. *Id.* at 3:31–3:40.

Defendant placed plaintiff on his knees, as plaintiff continued to fight and resist him, and defendant delivered a single knee to plaintiff's head. *Id.* at 3:40–3:44. Another officer then opened and ran through a gate to retrieve items that fell on the floor during the struggle as defendant held plaintiff down by his shoulders. *Id.* at 3:44–46. Plaintiff continued to struggle and resist—and once the officer returned to the other side of the gate after retrieving the items, defendant let go of plaintiff and ran through the gate. *Id.* at 3:36–4:00. Another officer closed the gate, leaving the prisoners on the other side. *Id.* at 4:00–4:02.

### IV. Plaintiff's objections

Plaintiff first "objects to the court dismissing his suit with prejudice," alleging that a dismissal is an abuse of discretion. Doc. 69 at 1. This objection, however, addresses neither the substance of the report nor identifies an error and is therefore overruled.

Several of plaintiff's objections concern his allegation that he "decided" to comply and stopped resisting. *Id.* at 1–5. He insists he was no longer resisting when defendant kneed him in the head. Plaintiff contends that he was "subdued" at this point. *Id.* at 2.

In determining whether a prison official acted maliciously or sadistically to cause unnecessary and wanton infliction of pain through excessive force, courts should consider: (1) "the extent of the injury suffered," (2) "the need for the application of force," (3) "the relationship between the need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (cleaned up).

The surveillance footage of the incident refutes plaintiff's allegations—and, ultimately, shows that the majority of the *Hudson* factors favor defendant Atumah. When video evidence blatantly contradicts the plaintiff's articulation of the facts, as here, the district court should view the facts in the light depicted by the

video—rather than crediting the plaintiff's version of the facts. *See Hodge v. Engleman*, 90 F.4th 840, 845–46 (5th Cir. 2024). The video footage in this case illustrates plaintiff sneaking up behind defendant and violently attacking him. Doc. 50-3 at 3:16–3:30.

Though plaintiff insists that he eventually "decided" to comply, the video shows his continued resistance throughout the incident. *Id.* at 3:16–4:00. Plaintiff claims that defendant kneed him only after he chose to comply, but the video illustrates that as defendant tried to hold him to the ground, plaintiff continued to move, resist, and struggle. *Id.* In fact, the footage reveals plaintiff attempting to raise himself up despite defendant trying to hold him down to the floor. *Id.* at 3:38–3:42. Plaintiff's attempts to break free of defendant's control are necessarily inconsistent with his assertion that he was "subdued."

Even though defendant Atumah kneed plaintiff during the struggle, the evidence reveals that defendant needed to apply force to restore discipline and maintain safety. This court cannot micromanage the amount of force necessary to quash violent actions and combative prisoners. *See Bryd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) ("The Supreme Court has told judges not to micro-manage the force necessary to quell such volatile situations.").

Here, plaintiff has not shown that defendant kneeing him one time was excessive—especially given that defendant faced a violent, combative prisoner. *See, e.g.*, *Jones v. Anderson*, 721 F. App'x 333, 335–36 (5th Cir. 2018) (per curiam) (unpublished) (finding no genuine issue of material fact that Anderson "did not employ excessive force" during a prison incident wherein "Anderson reasonably perceived Jones's actions to present a threat to Anderson's safety" and "his employment of force was necessary to restore discipline and mitigate such a threat."). Contrary to plaintiff's contentions, defendant did not continuously knee him and did not knee him only after he stopped resisting. *See* Doc. 50-3 at 3:16–4:00.

The footage therefore refutes plaintiff's factual allegations. The court is permitted to view the facts in the light depicted by the surveillance footage. *See Carnaby v. City of Hou.*, 636 F.3d 183, 187 (5th Cir. 2011) (stating that courts "need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." (cleaned up)). Plaintiff's objection lacks merit.

Plaintiff further objects to TDCJ's use-of-force report. Doc. 69 at 2. He claims that the report is not consistent with the video footage, as the report omits defendant Atumah kneeing him in the head. However, the magistrate judge relied on the content of the surveillance video in addressing all the *Hudson* factors—not the force report. *See* Doc. 67 at 21–22.

Having already determined that the video shows that defendant's single-knee to plaintiff's head during a violent altercation was made in an effort to restore discipline, security, and order rather than to maliciously cause plaintiff harm, plaintiff has shown no genuine dispute of material fact. *See Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018) (per curiam) (unpublished) ("Waddleton was in restraints, but he continued to be uncooperative, resisted, and attempted to strike an officer. These actions justify the application of some force."); *see also Davis v. Cannon*, 91 F. App'x 327, 329 (5th Cir. 2004) (per curiam) (unpublished) ("Defendants' actions were a continuation of their good faith effort to maintain or restore discipline following Davis's repeated refusal to obey Steele's orders."). This objection also lacks merit.

In his fourth objection, plaintiff asserts that he stated a claim against defendants Henslee and Enge. Specifically, he states that defendants "knew of need to train and supervise Atumah, but failed to do so." Doc. 69 at 3. Plaintiff's failure to demonstrate a constitutional violation renders meritless his failure-to-supervise claims. *Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 245 (5th Cir. 2025) ("[B]ystander liability . . . require[s] . . . an underlying constitutional violation."). This objection lacks merit.

Plaintiff also objects to the finding that he suffered de minimis injuries. He cites headaches and migraines. Doc. 69 at 4. But, as explained in the report, headaches and migraines—without more—are considered *de minimis*. *See Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (per curiam) (unpublished) (affirming dismissal of a prisoner's excessive force claim because the prisoner's split lip and headaches were "de minimis in the context given that [defendant's conduct] . . . was a reasonable attempt to maintain order").

And even if plaintiff suffered more than *de minimis* injuries, the remaining *Hudson* factors heavily favor defendant Atumah. With respect to the second factor, the surveillance video shows an obvious and clear need for force. Plaintiff attacked defendant from behind—and continued to resist throughout the encounter. Doc. 50-3 at 3:16–4:00. Defendant Atumah applied a small amount of force to subdue an assaultive prisoner that continued to fight and resist. *See Byrd*, 48 F.4th at 347 ("Nonetheless, Harrell's strikes came at the culmination of a violent encounter with a prisoner determined to fight through chemical spray and riot shields.").

The third factor—the relationship between the need for force and the amount of force used—favors defendant Atumah as well. Plaintiff's violent actions posed a substantial threat to officers—particularly to defendant—and to the security of the prison. Thus, the fourth factor also favors defendant. Although the footage is relatively silent on efforts to temper the severity of the response, the magistrate judge properly found that the footage shows nothing more than defendant attempting to subdue plaintiff after an assault and during his continued resistance.

Finally, plaintiff "objects to the court finding that defendant Atumah did not act 'maliciously or sadistically' and that defendants are entitled to qualified immunity." Doc. 69 at 6. The central question for any excessive force claim under the Eighth Amendment is whether the force was used in a good faith effort to restore discipline or used maliciously or sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 7. The Fifth Circuit "has

held that prison officials may violate an inmate's Eighth Amendment rights when they use gratuitous force against a prisoner who has already been subdued." *Waddleton*, 750 F. App'x at 256 (cleaned up).

The surveillance footage here shows no gratuitous force. Rather, it shows an assaultive prisoner attacking defendant, necessitating some forceful response. The footage depicts defendant applying a small amount of force to plaintiff—who continued to be uncooperative and resistant—in a good faith effort to maintain and restore discipline. Plaintiff has not established a genuine issue of material fact as to whether this use of force violated his Eighth Amendment rights. Thus, defendants are entitled to qualified immunity.

## V. Conclusion

Having reviewed the magistrate judge's report and being satisfied that there is no error, the court accepts its findings and recommendations. Plaintiff's objections (Doc. 69) are overruled. Defendants Atumah and McClain's motion for summary judgment (Doc. 50) is granted. Plaintiff's claims against defendants Henslee and Enge are dismissed with prejudice for the failure to state a claim upon which relief may be granted. Any pending motions are denied as moot.

*So ordered by the court on June 12, 2026.*

J. CAMPBELL BARKER
United States District Judge

- 7 -